**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARCELOUS PITTMAN, | ) | |
| | ) | Case No. 1:23-cv-14786 |
| Plaintiffs, | ) | |
| | ) | Hon. Georgia N. Alexakis |
| v. | ) | |
| | ) | Hon. Sheila M. Finnegan |
| JOHN HALLORAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | JURY TRIAL DEMANDED |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO THE CITY OF CHICAGO'S**
**MOTION TO BIFURCATE *MONELL* CLAIMS**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 2

ARGUMENT............................................................................................................ 3

I.    THE CITY'S LIABILITY DOES NOT DEPEND ON INDIVIDUAL LIABILITY,
AND A TRIAL ON THE MONELL CLAIMS WILL CERTAINLY TAKE PLACE ................ 5

II.    BIFURCATION WILL DUPLICATE THE PROCEEDINGS, WASTE RESOURCES,
AND INCONVENIENCE WITNESSES ...................................................................... 7

    A.    Defendants' Proposal Would Massively Waste Resources ................................... 7

    B.    Defendants' Concerns About Burden Are Misplaced ..................................... 10

III.    THE BALANCE OF PREJUDICE WEIGHS AGAINST BIFURCATION ................... 12

IV.    BIFURCATION WOULD VIOLATE THE SEVENTH AMENDMENT ..................... 13

V.    THE CITY'S PROPOSED "LIMITED CONSENT TO ENTRY OF JUDGMENT" IS
PROCEDURALLY IMPROPER AND SHOULD BE IGNORED ............................................ 14

VI.    STRONG NON-ECONOMIC INTERESTS WEIGH AGAINST BIFURCATION ....... 15

CONCLUSION ..................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Federal Cases**

*A.L. Hansen Mfg. v. Bauer Products*, No. 03-cv-3642, 2004 WL 1125911 (N.D. Ill. May 18, 2004)............. 7

*Allison v. Gallagher*, 2012 WL 4760863 (N.D. Ill. Oct. 5, 2012) ................................................................. 7

*Andersen v. Chicago*, 2016 WL 7240765 (N.D. Ill. Dec. 14, 2016).............................................................. 10

*Awalt v. Marketti*, No. 11-cv-6142, 2012 WL 1161500 (N.D. Ill. Apr. 9, 2012) ................................. 7, 12, 13

*Baskins v. Gilmore*, No. 17-cv-7566 (N.D. Ill. Mar. 25, 2019) ..................................................................... 7

*Bell v. Chicago*, 2010 WL 432310 (N.D. Ill. Feb.3, 2010)................................................................... 7, 10, 12

*Bonds v. City of Chicago*, No. 16-cv-5112, 2018 WL 1316720 (N.D. Ill. Mar. 14, 2018) ............................ 9

*Bouto v. Guevara*, No. 19-cv-02441 (N.D. Ill.)............................................................................................. 8

*Bradley v. Chicago*, 2010 WL 432313 (N.D. Ill. Feb. 3, 2010) .................................................................... 7

*Brent-Bell v. Chicago*, No. 17-cv-1099 (N.D. Ill. Feb. 5, 2019) ................................................................... 7

*Cadiz v. Kruger*, 2007 WL 4293976 (N.D. Ill. Nov. 29, 2007)................................................................... 12

*Cadle v. City of Chicago*, 2015 WL 6742070 (N.D. Ill.)............................................................................. 14

*Cage v. Chicago*, 2010 WL 3613981 (N.D. Ill. Sep. 8, 2010)................................................................... 7, 9

*Carter v. Dart*, 2011 WL 1466599 (N.D. Ill. Apr. 18, 2011) ................................................................ 7, 9, 15

*Castano v. American Tobacco*, 84 F.3d 734 (5th Cir. 1996) ........................................................................ 17

*City of Los Angeles v. Heller*, 475 U.S. 706 (1986)....................................................................................... 9

*Clarett v. Suroviak*, 2011 WL 37838 (N.D. Ill. Jan. 3, 2011)........................................................................ 7

*Clipco v. Ignite Design*, No. 04-cv-5043, 2005 WL 2861032 (N.D. Ill. Oct. 28, 2005) .............................. 13

*Coleman v. Peoria*, No. 1:15-cv-1100, 2016 WL 5497363 (C.D. Ill. Sep. 27, 2016) ................................... 12

*DeLeon-Reyes v. Guevara*, No. 18-cv-1028 (N.D. Ill.) ................................................................................ 14

*Estate of Loury*, 2017 WL 1425594 (N.D. Ill. Apr. 20, 2017) ...................................................................... 7

*Estate of McIntosh v. Chicago*, 2015 WL 5164080 (N.D. Ill. Sep. 2, 2015)................................................. 7

*Evans v. Chicago*, No. 10-cv-542, 2010 WL 3075651 (N.D. Ill. Aug. 5, 2010) ............................................ 9

*Fields v. Chicago*, 2017 WL 4553411 (N.D. Ill. Oct. 12, 2017) .......................................................... 4, 9, 14

ii

*Gecht v. Guevara*, No. 23-cv-01742 (N.D. Ill.)................................................................................8

*Giles v. Ludwig*, 2013 WL 6512683 (N.D. Ill. Dec. 6, 2013).........................................................7

*Gomez v. Guevara,* No. 18-cv-03335 (N.D. Ill.) ..................................................................... passim

*Haven v. Polksa*, 215 F.3d 727 (7th Cir. 2000) ...........................................................................18

*Hood v. Chicago*, No. 16-cv-1970 (N.D. Ill. Jan. 9, 2017)............................................................7

*Houseman v. United States Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999) ...........15

*Houskins v. Sheahan*, 549 F.3d 480 (7th Cir. 2008) ....................................................................12

*Iglesias v. Guevara*, No. 19-cv-06508 (N.D. Ill) ....................................................................8, 15

*In re Watts Coordinated Pretrial Proceedings*, No. 19-cv-1717 (N.D. Ill.).................................14

*Johnson v. Guevara*, No. 20-cv-04156 (N.D. Ill.) ........................................................................8

*King v. Evans*, 2015 WL 4397761, (N.D. Ill. July 17, 2015) .........................................................7

*Martinez v. Cook County*, 2011 WL 4686438 (N.D. Ill. Oct. 4, 2011) ...............................7, 9, 10

*Matter of Rhone-Poulenc Rorer*, 51 F.3d 1293 (7th Cir. 1995) ....................................................17

*Maysonet v. Guevara*, No. 18-cv-02342, 2020 WL 3100840 (N.D. Ill. June 11, 2020)................8

*McIntosh v. Chicago*, No. 17-cv-6357 (N.D. Ill. Feb. 13, 2019) ...................................................7

*McLaughlin v. State Farm*, 30 F.3d 861 (7th Cir. 1994) ..............................................................15

*Ott v. Milwaukee*, 2010 WL 5095305 (E.D. Wis. Dec. 8, 2010) ..............................................7, 16

*Owen v. City of Independence*, 445 U.S. 622 (1980).................................................................14, 18

*Pickett v. Dart*, No. 13-cv-1205, 2014 WL919673 (N.D. Ill. Mar. 10, 2014) ................................9

*Prince v. Kato*, No. 18-cv-2952 (N.D. Ill. Nov. 14, 2018) ............................................................7

*Ratliff v. Chicago*, No. 10-cv-739, 2012 WL 5845551 (N.D. Ill. Nov. 19, 2012).........................16

*Real v. Bunn-O-Matic*, 195 F.R.D. 618 (N.D. Ill. 2000) .........................................................7, 14

*Reyes v. Guevara*, No. 18-cv-01028 (N.D. Ill.) ............................................................................8

*Rivera v. Guevara*, 12-cv-4428 (N.D. Ill. Aug. 3, 2018).......................................................4, 8, 9

*Rodriguez v. Guevara*, No. 18-cv-07951 (N.D. Ill.) ......................................................................8

*Sierra v. Guevara,* No. 18-cv-3029 (N.D. Ill.) .........................................................................8, 16

*Smith v. Burge*, No. 16-cv-3404 (N.D. Ill. Aug. 9, 2018) ............................................................ 7, 18

*Solache v. City of Chicago*, No. 18-cv-02312 (N.D. Ill.) .............................................................. 8

*Swanigan v. Chicago*, 775 F.3d 953 (7th Cir. 2015) ............................................................ 8, 17, 18

*Terry v. Cook County*, 2010 WL 2720754 (N.D. Ill. July 8, 2010) ............................................ 7, 16

*Thomas v. Cook County*, 604 F.3d 293 (7th Cir. 2009) .................................................. 7, 8, 10, 12

*U.S. v. Gomez*, 763 F.3d 845 (7th Cir. Aug. 8, 2014) ................................................................... 15

*Velez v. City of Chicago*, No. 18-cv-08144 (N.D. Ill.) ............................................................... 14

*Wells v. Coker*, No. 08-cv-3302, 2014 WL 716518 (C.D. Ill. Feb. 25, 2014) .............................. 7, 9

*Williams v. Chicago*, 315 F. Supp. 3d 1060 (N.D. Ill. 2018) ...................................................... 10

## Rules

Fed. R. Civ. P. 42(b) ....................................................................................................................... 7

Fed. R. Evid. 105 ............................................................................................................................ 15

Rule 16 ............................................................................................................................................ 17

Rule 30(b)(6) ............................................................................................................................. 11, 14

Rule 68 ............................................................................................................................................ 17

Rule 7(a) ......................................................................................................................................... 18

**INTRODUCTION**

Marcelous Pittman spent nearly two decades in prison for a crime he did not commit. Plaintiff is among dozens of innocent people wrongfully convicted due to the work of Chicago Police Department detectives, including Defendants Halloran and O'Brien. These wrongful convictions were not isolated incidents of misfortune or rogue "bad acts" but were, instead, part of Chicago's practices. The City now asks the Court to bifurcate Plaintiff's *Monell* claim; a disfavored maneuver that is really an attempt to permanently evade liability. The attempt also seeks to impose needless costs, delay, and will almost certainly spur even more litigation. As a court in this district found in denying a nearly identical motion in *Gomez v. Guevara,* a case advancing similar *Monell* claims, avoidance of prejudice and judicial economy weigh against bifurcation. No. 18-cv-03335, Dkt. 65 at 8, 9 (N.D. Ill.), Ex. A ("[B]ifurcating *Monell* discovery only tends to prolong the case and leads to unnecessary disputes as to the appropriate scope of non-*Monell* versus *Monell* discovery" and noting that the City is impermissibly aiming "to achieve a *de facto* dismissal of the *Monell* claim by way of bifurcation.").

For at least six reasons, the motion should be denied. First, Plaintiff's *Monell* claims do not depend on whether an individual Defendant is liable. Instead, the City can be found liable—for example, for a practice of suppressing material information—even if the jury were to conclude no individual defendant is responsible. Two recent juries found the City liable for systemically suppressing investigative materials, and the suppression of files in each case was a system-wide problem in file production, not necessarily the misconduct of any individual officer. *Rivera v. Guevara*, 12-cv-4428, Dkt. 678 (N.D. Ill. Aug. 3, 2018); *Fields v. Chicago*, 2017 WL 4553411, at *3-*4 (N.D. Ill. Oct. 12, 2017).

Second, bifurcation will not save time or resources. Instead, it would multiply the work of the Court and the parties, as well as inconvenience witnesses. The *Monell* claims will be litigated

1

regardless, and so bifurcation will only serve to duplicate the proceedings. That duplication would be particularly inefficient given much of the evidence is relevant to both the *Monell* claims and individual claims.

Third, denying bifurcation will not unfairly prejudice Defendants at trial. Jury instructions are ample protection against any risk of prejudice. On the other hand, granting bifurcation would severely prejudice Plaintiff, and that prejudice must be given due weight.

Fourth, the City's position violates the Seventh Amendment. The City proposes the Court oversee discovery, decide dispositive motions, oversee a trial against individual Defendants, and then reopen *Monell* discovery, entertain a new round of dispositive motions, and hold a second trial. But those two trials will necessarily require two separate juries to consider the same factual issues—namely, the violation of Plaintiff's constitutional rights and the cause of that violation. The Seventh Amendment forbids that approach.

Fifth, the City offers to accept judgment (while denying wrongdoing) if Plaintiff first establishes liability against an individual Defendant, as if this would moot Plaintiff's claims. The offer is rejected. And, precedent establishes that a contingent offer to pay cannot moot federal claims. Moreover, the City's proposal is largely redundant of its existing indemnity obligation, but a promise to fulfill that obligation does not insulate a party from federal civil-rights claims.

Finally, there are important non-economic reasons for the *Monell* claims to proceed. The practices at issue have been (and remain) broken. The cost, measured in centuries of life lost, is beyond comprehension. Plaintiff brings suit to spur meaningful reform. Bifurcation should be denied.

## BACKGROUND

Marcelous Pittman was 18 years old when he was wrongfully convicted of the 2001 shooting of Officer Patrick Doyle and attempted murder of Vashon Prince (hereinafter "the Doyle

2

shooting"). Dkt. 69 ¶¶ 69-72. He was framed by the Defendant Officers, including Defendant Halloran and Defendant O'Brien, who suppressed exculpatory evidence, fabricated evidence, and physically abused Plaintiff in order to falsely implicate him in the crime. *Id.* ¶¶ 51-61, 65-66. Among other abuse, Defendants Halloran and O'Brien stripped Plaintiff to his boxers, struck him in the chest (where he had a prominent scar from open-heart surgery), and choked him until he adopted the confession they had fabricated. *Id.* ¶¶ 51, 55-58. Defendants suppressed the true circumstances of Plaintiff's false confession. *Id.* ¶¶ 71-72.

The Defendant Officers' unconstitutional misconduct was neither an accident nor a one-off occurrence. Rather, as described more fully in Plaintiff's Amended Complaint, it was due to the City's policies and practices. In particular, Plaintiff has alleged that the City had a practice of using physical and psychological tactics to coerce false confessions. *Id*. ¶¶ 85-90. That practice was able to flourish because the City turned a blind eye to it—failing to meaningfully supervise and discipline police officers who engaged in this type of misconduct. *Id.* ¶¶ 96-104.

Mr. Pittman's conviction was also the by-product of the City's longstanding practice of maintaining clandestine street files—files containing material exculpatory and impeachment evidence that are never disclosed to the prosecution or defense—and inadequate file-keeping practices. *Id.* ¶¶ 91-95. For example, and as alleged in the Amended Complaint, the Defendant Officers' and third party officers' contemporaneous notes from the investigation have not been disclosed and the original investigative file from the Doyle shooting has either been suppressed, lost, or destroyed, as a result of the City's inadequate policies and practices. *Id.* ¶¶ 93-95. The claims against the individual Defendants and the City dovetail and for the reasons described below, the City Defendants' motion to bifurcate should be denied.

## ARGUMENT

This Court may separate issues "[f]or convenience, to avoid prejudice, or to expedite and

economize." Fed. R. Civ. P. 42(b). The Court must "be satisfied that the decision to bifurcate does not unfairly prejudice the non-moving party." *Houseman v. U.S. Aviation*, 171 F.3d 1117, 1121 (7th Cir. 1999). Bifurcation is the exception, not the rule, and separate trials should not be ordered "unless such a disposition is clearly necessary." *Real v. Bunn-O-Matic*, 195 F.R.D. 618, 619 (N.D. Ill. 2000); *cf.* Fed. R. Civ. P. 42(b) advisory committee's note. ("[S]eparation of issues for trial is not to be routinely ordered[.]"); *A.L. Hansen Mfg. v. Bauer Products*, No. 03-cv-3642, 2004 WL 1125911, at *2 (N.D. Ill. May 18, 2004) ("[T]he decision to bifurcate centers on a balance of equities. However, this balance is weighted against bifurcation."). The court "should remain mindful of the traditional role of the factfinder; *i.e.* to make an ultimate determination on the basis of a case presented in its entirety." *Real*, 195 F.R.D. at 620.

Since the Seventh Circuit decided *Thomas v. Cook County*, 604 F.3d 293, 305 (7th Cir. 2009), "the weight of authority holds that bifurcation is now heavily disfavored," *Awalt v. Marketti*, No. 11-cv-6142, 2012 WL 1161500, at *10 n.2 (N.D. Ill. Apr. 9, 2012), particularly in cases like this.[1] This Court recently rejected bifurcation in a case that similarly dealt with a wrongful conviction obtained by an officer who, like Halloran and O'Brien, obtained numerous wrongful convictions, and that alleged precisely the same *Monell* claims against the City. *Gomez,*

---

[1] *See Baskins v. Gilmore*, No. 17-cv-7566, Dkt. 135 (N.D. Ill. Mar. 25, 2019); *McIntosh v. Chicago*, No. 17-cv-6357, Dkt. 101 (N.D. Ill. Feb. 13, 2019); *Brent-Bell v. Chicago*, No. 17-cv-1099, Dkt. 140 (N.D. Ill. Feb. 5, 2019); *Prince v. Kato*, No. 18-cv-2952, Dkt. 65 (N.D. Ill. Nov. 14, 2018); *Smith v. Burge*, No. 16-cv-3404, Dkt. 205 (N.D. Ill. Aug. 9, 2018); *Hood v. Chicago*, No. 16-cv-1970, Dkt. 86 (N.D. Ill. Jan. 9, 2017); *Estate of Loury*, 2017 WL 1425594, at *5 (N.D. Ill. Apr. 20, 2017); *Estate of McIntosh v. Chicago*, 2015 WL 5164080 (N.D. Ill. Sep. 2, 2015); *King v. Evans*, 2015 WL 4397761, at *2 (N.D. Ill. July 17, 2015); *Wells v. Coker*, 2014 WL 716518 (C.D. Ill. Feb. 25, 2014); *Giles v. Ludwig*, 2013 WL 6512683 (N.D. Ill. Dec. 6, 2013); *Allison v. Gallagher*, 2012 WL 4760863, at *2 (N.D. Ill. Oct. 5, 2012); *Awalt*, 2012 WL 1161500, at *10; *Martinez v. Cook County*, 2011 WL 4686438, at *3-4 (N.D. Ill. Oct. 4, 2011); *Carter v. Dart*, 2011 WL 1466599, at *2-5 (N.D. Ill. Apr. 18, 2011); *Clarett v. Suroviak*, 2011 WL 37838, at *1-3 (N.D. Ill. Jan. 3, 2011); *Ott v. Milwaukee*, 2010 WL 5095305, at *2 (E.D. Wis. Dec. 8, 2010); *Cage v. Chicago*, 2010 WL 3613981, at *2 (N.D. Ill. Sep. 8, 2010); *Terry v. Cook County*, 2010 WL 2720754, at *1-3 (N.D. Ill. July 8, 2010); *Bell v. Chicago*, 2010 WL 432310, at *2-4 (N.D. Ill. Feb.3, 2010); *Bradley v. Chicago*, 2010 WL 432313 (N.D. Ill. Feb. 3, 2010).

No. 18-cv-03335, Dkt. 65 at 10, Ex. A ("As this District has recognized, a judgment naming the city itself and holding it responsible for its policies may have a greater deterrent effect than a judgment against a police officer that is paid by the city. The City should not be allowed to strip [plaintiff] of this opportunity, and as such, must face the music with respect to the merits of the *Monell* claims."). Bifurcation is routinely denied in civil cases concerning repeat-offender Chicago officers. *Sierra v. Guevara,* No. 18-cv-3029, Dkt. 84 (N.D. Ill.), Ex. B; *Iglesias v. Guevara*, No. 19-cv-06508, Dkt. 130 (N.D. Ill.), Ex. C; *Rivera v. Guevara*, No. 12-cv-4428, Dkt. 443 (N.D. Ill.); *Reyes v. Guevara*, No. 18-cv-01028, Dkt. 174 (N.D. Ill.); *Solache v. City of Chicago*, No. 18-cv-02312, Dkt. 99 (N.D. Ill.); *Maysonet v. Guevara*, No. 18-cv-02342, 2020 WL 3100840, at *1 (N.D. Ill. June 11, 2020); *Rodriguez v. Guevara*, No. 18-cv-07951, Dkt. 68 (N.D. Ill.); *Bouto v. Guevara*, No. 19-cv-02441, Dkt. 105 (N.D. Ill.); *Johnson v. Guevara*, No. 20-cv-04156, Dkt. 77 (N.D. Ill.); *Gecht v. Guevara*, No. 23-cv-01742, Dkt. Nos. 112 & 126 (N.D. Ill.). This suit is the similar to these cases; bifurcation should be similarly denied.

## I.   THE CITY'S LIABILITY DOES NOT DEPEND ON INDIVIDUAL LIABILITY, AND A TRIAL ON THE MONELL CLAIMS WILL CERTAINLY TAKE PLACE

The City's principal argument is that its own liability depends on a jury first finding individual liability. Dkt. 65 at 4-7. That is incorrect on the law and the facts.

"The actual rule," the Seventh Circuit said in *Thomas*, is that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an inconsistent verdict." 604 F.3d 293, 305 (7th Cir. 2010); *see Swanigan v. Chicago*, 775 F.3d 953, 962 (7th Cir. 2015) ("In some civil-rights cases, . . . a verdict in favor of individual defendants would not necessarily be inconsistent with a plaintiff's verdict on a factually distinct *Monell* claim."). Judges in this District analyze the propriety of bifurcation bearing in mind that a municipal policy can cause a constitutional deprivation even if a jury does not find the individual

5

officers liable. *Bonds*, No. 16-cv-5112, 2018 WL 1316720, at *4-5 (N.D. Ill. Mar. 14, 2018); *Pickett v. Dart*, No. 13-cv-1205, 2014 WL919673 (N.D. Ill. Mar. 10, 2014); *Wells v. Coker*, No. 08-cv-3302, 2014 WL 716518 (C.D. Ill. Feb. 25, 2014); *Martinez*, 2011 WL 4686438, at *1; *Cage*, 2010 WL 3613981, at *1; *Evans v. Chicago*, No. 10-cv-542, 2010 WL 3075651 (N.D. Ill. Aug. 5, 2010). Cases like this one, where a jury could find a policy caused a constitutional deprivation without finding misconduct by a particular officer, are different in kind from cases where municipal liability is premised on a particular officer's use of force, such as *City of Los Angeles v. Heller*, 475 U.S. 706 (1986).

Defendants contend a *Monell* verdict is impossible without individual liability, but their brief does not explain why a verdict against the City would necessarily be inconsistent with a verdict in favor of the individuals. *Carter*, 2011 WL 1466599, at *3 ("[T]he fact that Plaintiff's *Monell* claim and his claims against the individual Defendants share a common element . . . is not sufficient to justify bifurcation."). *Monell* liability is possible without individual liability. The City knows this is true because the City lost a *Monell* verdict in 2018 in *Rivera*, which presented one of the same *Monell* theories at issue here: that the City systematically suppressed exculpatory evidence. The verdict against the City in *Rivera* is independent of the jury's findings against the defendants in that case. The same is true of *Fields*, which dealt with the City's file suppression issue from the 1980's through the 2000's, including during the Doyle shooting investigation. 2017 WL 4553411, at *3-4. And the same would be true in this case. A verdict for Plaintiff on his *Monell* theory that the City's file-keeping system prevented transmission of exculpatory information to the criminal justice system would be entirely consistent with a verdict that each individual Defendant did not personally suppress evidence. As this Court noted when it denied bifurcation in *Gomez*, a jury might find that the individuals put items of evidence where they were supposed to in Chicago Police Department files, but that the City had no mechanism for ensuring

those files got turned over to Plaintiff or attorneys involved in his criminal prosecution.[2]

*Monell* liability does not depend on individual liability, a verdict for the individuals will not necessarily dispose of the *Monell* claims, and a trial on those claims will be necessary no matter what.[3] The relationship between the individual and municipal claims in this case weighs against bifurcation.[4]

## II.    BIFURCATION WILL DUPLICATE THE PROCEEDINGS, WASTE RESOURCES, AND INCONVENIENCE WITNESSES

Because the *Monell* claims in this case will be tried no matter what, Defendants' proposal means there would be two separate cases tried consecutively. That approach would multiply the proceedings, impose huge costs on the Court and the parties, and inconvenience the witnesses—all with very little benefit. These factors also weigh heavily in favor of denying bifurcation.

### A.  Defendants' Proposal Would Massively Waste Resources

---

[2] Plaintiff will present evidence demonstrating a number of ways in which City policies prevented investigative information from reaching the criminal justice system, but one example illustrates the point: the City responded to subpoenas for documents from criminal defense attorneys through the so-called Subpoena Service Unit, which often would not gather investigative materials from the detective division Areas and other units of the police department where investigative files relating to cases were kept. There were no written policies that governed the subpoena service unit and civilian personnel responding to subpoenas received no training. As a result, a systemic problem at the relevant time was that the City's response to subpoenas sent for records would exclude material exculpatory and impeachment records in the investigative files. The jury might find that this policy of the City prevented Plaintiff from receiving investigative materials, even if the individual Defendants are not liable for that suppression.

[3] Plaintiff's case is different in this way than cases cited by the City. The result in *Andersen v. Chicago*, 2016 WL 7240765, at *3-4 (N.D. Ill. Dec. 14, 2016)—and *Williams v. Chicago*, 315 F. Supp. 3d 1060, 1081 (N.D. Ill. 2018) (citing *Andersen*)—is based on a misunderstanding of the street-files theory. In those cases, courts decided the street-files practice depended on an individual defendant suppressing the street file. But that misses the point—the failure to transmit those files to the criminal justice system is a matter of City policy, not individual misconduct. The file is not handed over because City policy prevented that from happening, not because of any misconduct.

[4] In many cases, arguments against bifurcation are based on a contention that the City can still be liable for constitutional violations caused by municipal policies even if qualified immunity is granted to individual defendants. Though that argument is not necessary to deny bifurcation, it has force here as well. The City argues the individual Defendants are unlikely to enjoy qualified immunity. Dkt. 94 at 5. But the fact that the City says its officers will likely lose their claim of immunity is meaningless, unless the individuals actually disclaim immunity. If immunity is available to the individual Defendants, then that too is a way that the City might be liable even if the individuals are not. *Gomez*, No. 18-cv-03335, Dkt. 56 at 7; *Thomas*, 604 F.3d at 305; *Bell*, 2010 WL 432310, at *3; *Martinez*, 2011 WL 4686438, at *2.

7

If Defendants' proposed bifurcation were adopted, the parties would engage in two separate rounds of discovery—the first to develop the record necessary for the case against the individual Defendant Officers, and the second to supplement that record with evidence necessary for the *Monell* claim. That would mean two depositions of Defendants and most other fact witnesses (one to ask them about their role in the individual case, and a second to ask questions relevant to City policies and practices). These witnesses would literally have to be produced for their depositions on two separate occasions, months (or likely years) apart. There would be two rounds of written discovery. Two rounds of Rule 30(b)(6) depositions (because some topics will pertain to both the individual and *Monell* cases and other topics will relate solely to *Monell*). Two rounds of expert reports, discovery, and depositions. And during these rounds of discovery there would be motion practice as disputes arose between the parties.

Following each round of discovery, there would be dispositive motions for the Court to resolve. Perhaps without municipal claims in the case, the individual Defendants would decide to slow the process down further by taking a qualified-immunity appeal from the denial of their motions for summary judgment. After that, there would be two rounds of briefing on *Daubert* motions, two separate filings of motions in limine (with responses and replies), two pretrial orders, and two jury instruction conferences. All of this duplicative work would be avoided entirely if it was done once, in a unified proceeding, without bifurcating the *Monell* claims.

Perhaps most importantly, Defendants' plan would require two trials. This would impose a huge burden on the Court, on witnesses, and on the parties. Each witness would be called twice— once to talk about the facts of the individual case, and a second time to talk about the City's policies, and the way those policies impacted the Doyle shooting investigation. Experts would have to fly to Chicago twice to testify, at great expense to the parties. Exhibits would be introduced against the individual Defendants and then re-introduced against the City in the second trial. There

8

would be two rounds of opening arguments and two rounds of closing arguments. Again, each trial would bring another round of motion practice. Courts in this district have decided in these circumstances that bifurcation makes little sense. *Cadiz v. Kruger*, 2007 WL 4293976, at *5 (N.D. Ill. Nov. 29, 2007) (discussing precisely these sorts of problems with assuming that judicial economy is served by bifurcation); *see also Gomez*, No. 18-cv-3335, Dkt. 65 at 8-9 (Ex. A); *Awalt*, 2012 WL 1161500, at *10; *Bell*, 2010 WL 432310, at *4.

Moreover, this massive duplication of proceedings and the attendant years-long delay in resolving the case would have occurred even though much of the evidence relevant to the *Monell* theories is admissible against the individual Defendants at the first trial, and much of the evidence relevant to the individual claims at the first trial must also be presented at the second trial. On the former point, evidence of a municipal policy or practice is probative of whether an individual Defendant engaged in a particular course of conduct consistent with those policies on a particular occasion. *Coleman v. Peoria*, No. 1:15-cv-1100, 2016 WL 5497363, at *6 (C.D. Ill. Sep. 27, 2016) (denying bifurcation because *Monell* evidence was "relevant to the actions of the defendant officers, who would, assuredly, claim to have acted in conformity with sanctioned department policies and practices"). On the latter point, *Monell* requires proof that a policy was the moving force behind the constitutional violation, *Thomas*, 604 F.3d at 306, and so the *Monell* trial will require voluminous evidence about the underlying crime, investigation, and wrongful conviction. *See Houskins v. Sheahan*, 549 F.3d 480, 496 (7th Cir. 2008) (affirming a decision not to sever claims against two defendants because those claims overlapped in "the facts, evidence, and witnesses required").

Defendants' proposal would increase the burden on the Court and parties, it will multiply the costs of the litigation, and it will inconvenience many third-party witnesses. These burdens would be imposed without any offsetting benefit.

9

## B. Defendants' Concerns About Burden Are Misplaced

Defendants' concerns about the burden presented by the *Monell* claims are misplaced. First, many of those concerns fall away once it is clear that the *Monell* claims will be tried no matter what, and so the choice is either trying them together with the other claims or trying them in the separate proceeding just described.

Second, the City's judicial-economy argument is nothing more than an argument that *Monell* discovery is time consuming and expensive for it. Dkt. 94 at 6-10. However, the expense of defending against weighty *Monell* theories—ones on which the City has twice been found liable in recent years for depriving young men of decades of their lives—is not a justification for bifurcation. *Awalt*, 2012 WL 1161500, at *10 ("[T]he plaintiff is the master of her complaint, and so the (often times extraordinary) costs associated with bringing a claim for municipal liability should not sway the Courts' consideration too far."). Moreover, properly analyzed, bifurcation will most likely increase the cost of prosecuting and defending the case as a whole. *Clipco v. Ignite Design*, No. 04-cv-5043, 2005 WL 2861032, at *3 (N.D. Ill. Oct. 28, 2005) (bifurcation not appropriate when it "would result in unnecessary delay, additional expense, or some other form of prejudice").

Third, the City argues that eliminating the *Monell* claims will conserve judicial resources because the adjudication of discovery, the City's motion for summary judgment, and a trial of those claims will no longer be necessary. Dkt. 94 at 10-13. Not only is that flatly incorrect, for the reasons explained already, but it is also perverse to argue that a party should be able to achieve *de facto* dismissal of the claims against it, by way of a motion to bifurcate, by suggesting that it is burdensome for our court system to adjudicate those claims—a sentiment that has been rejected in another case. *See Gomez*, 18-cv-3335, Dkt. 65 at 9-10 (Ex. A) (recognizing that though "*Monell*-related discovery will likely be a costly effort, that fact alone is insufficient to require bifurcation").

10

This is particularly true when one considers that Section 1983 is designed to ensure municipal accountability for violations of civil rights. *Owen v. City of Independence*, 445 U.S. 622 (1980). It is also not the case that *any* burden justifies bifurcation, otherwise "courts always would bifurcate *Monell* claims (but they do not do so)."

Finally, the City overstates the burden of discovery necessary to try the *Monell* claims. Dkt. 94 at 8-12. Much of what the City will have to produce here—whether written policies, Rule 30(b)(6) testimony, employee records, or a sample of homicide files—has been produced already in other cases involving the City of Chicago's policies and practices during this time period, including *Velez v. City of Chicago*, No. 18-cv-08144 (N.D. Ill.)*; DeLeon-Reyes v. Guevara*, No. 18-cv-1028 (N.D. Ill.)*; In re Watts Coordinated Pretrial Proceedings*, No. 19-cv-1717 (N.D. Ill.), and *Fields*. *See also Cadle*, 2015 WL 6742070, at *2 ("The City is very familiar with this type of discovery, and the Court has no doubt that the City has produced similar information in other cases. The incremental burden of doing so again here does not militate heavily in favor of bifurcation."). Each of the above cases involve the production of *Monell* files during the relevant time period. *See Velez* (production of CR files for detectives and gang specialists, as well as homicide files, between 1996-2001); *DeLeon-Reyes* (production of CR files, as well as homicide files, from 1995-1998); *In re Watts* (production of randomized sample of CR files between 1999-2011); *Fields* (production of homicide files between 1999-2006). There is no doubt that materials from these other cases can be used here. Indeed, it may be the case that the *Monell* claims can be litigated entirely based on documents produced in other cases without the production of additional materials here.

The City complains about having to respond to several discovery requests: those asking for Complaint Register ("C.R.") Files and the City's policies, including on file-keeping, interrogations, and disciplining and supervising officers. But the City has responded to the same types of requests at issue here in other cases without the sky falling in, including in the three cases cited above. And

11

to the extent that there are concerns during litigation about the burdens of discovery, as Judge

Valdez noted when she denied bifurcation in *Iglesias v. Guevara*, No. 19-cv-06508, Dkt. 131 (N.D.

Ill), those issues can be resolved through the normal process imposed by the Federal Rules, not

*Monell* bifurcation. *See* Ex. C; *see also Carter*, 2011 WL 1466599, at *5.

## III.    THE BALANCE OF PREJUDICE WEIGHS AGAINST BIFURCATION

The City also fails to support its argument that without bifurcation, Defendants will be

prejudiced at trial. Dkt. 94 at 13-15. The only potential prejudice here if the *Monell* claims are

bifurcated is to Plaintiff.

As discussed, a substantial portion of the *Monell* evidence will be directly relevant to

Plaintiff's claims against the individuals, and it is therefore not unfairly prejudicial at all.

Moreover, even if there was a concern about prejudice to the individual Defendants at trial, that

would not justify bifurcation. Instead, limiting instructions are the established mechanism for

managing prejudice. Fed. R. Evid. 105 (instructions given to "restrict the evidence to its proper

scope"); *U.S. v. Gomez*, 763 F.3d 845, 860-61 (7th Cir. Aug. 8, 2014) (en banc) (limiting

instructions sufficient to manage any prejudice caused by the admission of other-acts evidence, and

commenting that "[l]ay people are capable of understanding the foundational principle in our

system of justice that we try cases, rather than persons"); *McLaughlin v. State Farm*, 30 F.3d 861,

870-71 (7th Cir. 1994) (no need to bifurcate as we presume jury will follow limiting instruction);

*Gomez*, No. 18-cv-03335, Dkt. 65 at 4 (Ex. A) ("Regarding potential prejudice to the Defendant

Officers, a limiting instruction to the jury is the proper mechanism to address that concern").

Finally, any prejudice avoided by bifurcation must be weighed against the prejudice to

Plaintiff. *Houseman*, 171 F.3d at 1121. The only truly unfair prejudice here is that which Plaintiff

would suffer if bifurcation was granted.

First, because the "claims asserted by Plaintiff are interwoven . . . it would be an

unreasonable hardship and completely uneconomical to require proof of virtually the same facts in two separate trials." *Ratliff v. Chicago*, No. 10-cv-739, 2012 WL 5845551, at *6 (N.D. Ill. Nov. 19, 2012). This factor is especially salient here where there are unanswered issues pertaining to the paltry remnants of the Doyle shooting investigation and the disappearance of routine reports and contemporaneous notes. Plaintiff will need to conduct discovery into the City's retention, maintenance, and destruction practices to investigate his due process theories against the individual Defendants. Given the requisite discovery into the City's file-keeping practices, it is likely that if the case were bifurcated there would be numerous discovery disputes about what is "*Monell*-only" discovery and what discovery properly pertains to policies and practices that are relevant to Plaintiff's claims against the individual Defendants. *Ott*, 2010 WL 5095305, at *3 (denying bifurcation where it was "likely that bifurcating discovery in this case will lead to more disputes as to whether certain discovery requests relate to the permissible individual claims or the impermissible *Monell* claims"); *see also Sierra*, 1:18-cv-3029, Dkt. 88. The parties are likely to dispute whether Plaintiff's discovery requests on the City's file-keeping and retention procedures, as it relates to the investigative file, qualify as *Monell* discovery. Should the Court bifurcate discovery, such disputes are likely to result in protracted litigation.

Second, bifurcation would cause delays in the final resolution of Plaintiff's claims, and it would drive up the cost of the litigation. *Terry*, 2010 WL 2720754, at *2 ("[J]udges in this district have echoed Plaintiff's concerns about delay of the case and possible prejudice to Plaintiff from that delay.").

The risk of unfair prejudice to Defendants is extremely low, particularly at this stage of the case. On the other hand, the prejudice to Plaintiff from bifurcation is obvious and pronounced. In such a circumstance, the balance of equities favors a single proceeding.

## IV.   BIFURCATION WOULD VIOLATE THE SEVENTH AMENDMENT

The City's proposal would require two separate trials, in front of two separate juries, which would both consider the same issues, in violation of the Seventh Amendment. Most importantly, both juries would be required to consider whether and how Plaintiff's constitutional rights were violated by the suppression of evidence—the first to assess whether the individual Defendants violated his right to due process, and the second to assess whether the City's policies were the moving force behind that same violation.

The Seventh Amendment prohibits dividing issues in ways that requires a second jury to reexamine an issue decided by the first. *Matter of Rhone-Poulenc Rorer*, 51 F.3d 1293, 1303 (7th Cir. 1995) ("[T]he judge must not divide issues between separate trials in such a way that the same issue is reexamined by different juries."); *Castano v. American Tobacco*, 84 F.3d 734, 751 (5th Cir. 1996) ("The Seventh Amendment entitles parties to have fact issues decided by one jury, and . . . . [t]hus, the Constitution allows bifurcation of issues that are so separable that the second jury will not be called upon to reconsider findings of fact by the first.").

## V. THE CITY'S PROPOSED "LIMITED CONSENT TO ENTRY OF JUDGMENT" IS PROCEDURALLY IMPROPER AND SHOULD BE IGNORED

In an attempt to avoid the issues its proposed bifurcation creates, the City attaches what it calls a "Limited Consent to Entry of Judgment" to its motion, in which it states it would accept a judgment against it if the individual Defendants were found to have violated Pittman's constitutional rights but were also entitled to immunity. Dkt. 94-2. As the Seventh Circuit has observed recently, this so-called "consent" is not authorized by the Federal Rules of Civil Procedure, and it is therefore procedurally deficient. *Swanigan*, 775 F.3d at 959-62. It is not a Rule 68 offer of judgment, because it does not satisfy Plaintiff's demands. *Id*. It is not a Rule 16 stipulation agreed upon by the parties, both because it does not stipulate to any facts and because Plaintiff rejects it. (That might be different if the City was proposing to stipulate that it had a policy

14

and practice of physically and psychologically coercing confessions and suppressing exculpatory information in street files during the relevant time.) It is not a permissible responsive pleading under Rule 7(a). *Haven v. Polksa*, 215 F.3d 727, 732 (7th Cir. 2000). The City's proposed consent to entry of judgment should be ignored.

## VI.   STRONG NON-ECONOMIC INTERESTS WEIGH AGAINST BIFURCATION

Finally, Plaintiff has an extremely strong non-economic interest in preventing future constitutional violations, particularly wrongful convictions. Defendants' dismissal of that interest, and its overemphasis on monetary damages as the end-all-be-all of reform, is shortsighted and self-serving. Dkt. 94 at 5. Deterrence of constitutional misconduct is a fundamental purpose of Section 1983. *Owen*, 445 U.S. at 627 ("[Section 1983] was intended not only to provide compensation to victims of past abuses, but to serve as a deterrent against future constitutional deprivations[.]"). "Some cases have remedial import beyond the individual plaintiff's claim for monetary damages, and § 1983 provides a vehicle for obtaining other judicial relief against governmental policies that violate constitutional rights." *Swanigan*, 775 F.3d at 962.

This case concerns a wrongful conviction caused by City policies that deprived countless individuals of fair trials and allowed dangerous officers like O'Brien and Halloran to terrorize the community with impunity. The stakes in a civil rights lawsuit will rarely be higher than they are here, and the *Monell* claims are of profound importance to future institutional reform. Courts have recognized that lawsuits like this "can be distinguished from other lawsuits against the City in which district courts have bifurcated *Monell* claims." *Smith*, No. 16-cv-3404, Dkt. 205, at 2. The strong non-economic objectives of Plaintiff's lawsuit also weigh against bifurcation.

## CONCLUSION

The City cannot avoid litigation over its role in the misconduct alleged. The City's motion should be denied.

15

Dated: September 4, 2024                    Respectfully submitted,


                                            /s/ Annie Prossnitz
                                            *Counsel for Plaintiff*

                                            Jon Loevy
                                            Julia Rickert
                                            Renee Spence
                                            Annie Prossnitz
                                            LOEVY & LOEVY
                                            311 N. Aberdeen
                                            Chicago, Illinois 60607
                                            (312) 243-5900
                                            prossnitz@loevy.com

**CERTIFICATE OF SERVICE**

I, Annie Prossnitz, an attorney, hereby certify that on September 4, 2024, I caused the foregoing to be filed using the Court's CM/ECF system, which served the documents on all counsel of record.


/s/ Annie Prossnitz
*Counsel for Plaintiff*